**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★ JUL 03 2012 ★

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

MOACIR LIMA,

        *Plaintiff,*

- against -

NEW YORK CITY DEPARTMENT OF EDUCATION,
ELAINE GORMAN, TAMIKA S. MATHESON,
MELODEE KHRISTAN and CARLOS M. CARMONA,

        *Defendants.*

Civil Action No.:

**CV-12 3318**

**VERIFIED COMPLAINT**

MAUSKOPF, J.
GOLD, M.
SUMMONS ISSUED

Trial by Jury

---

Plaintiff, MOACIR LIMA, by and through his attorneys, WOLIN & WOLIN, complaining of the defendants, NEW YORK CITY DEPARTMENT OF EDUCATION, ELAINE GORMAN, TAMIKA S. MATHESON, MELODEE KHRISTAN and CARLOS M. CARMONA, alleges as follows:

### PRELIMINARY STATEMENT

1. This is an action brought pursuant to 42 U.S.C. § 1983 *et seq.* in which plaintiff alleges a violation of his right to due process under the Fifth and Fourteenth Amendments to the Constitution of the United States. Plaintiff also alleges that defendants deprived him of a liberty interest under statute. Plaintiff also asserts a state contractual claim.

### STATEMENT PURSUANT TO RULE 9

2. For purposes of complying with Local Rule 9, plaintiff states that he has no corporate parent, subsidiary or affiliate and that there are no other interested parties.

### JURISDICTION & VENUE

3. The jurisdiction of the Court over this controversy is invoked pursuant to 28 U.S.C.

-1-

§ 1331, 1343, 1346 and 2301 and the Court's supplemental jurisdiction.

4. Venue in the Eastern District of New York is proper pursuant to 28 U.S.C. § 1391.

## PARTIES

5. Plaintiff MOACIR LIMA was and still is a citizen of the United States and a resident of the State of New York, County of Queens which is within the Eastern District of New York.

6. Defendant NEW YORK CITY DEPARTMENT OF EDUCATION (hereinafter "DOE") was and still is an agency of the State of New York maintaining a principal place of business in the City, County and State of New York at 52 Chambers Street.

7. Defendant ELAINE GORMAN (hereinafter "Gorman"), at all times relevant hereto, was the Manhattan High School Superintendent and maintained an office in the City, County and State of New York at 333 Seventh Avenue.

8. Defendant TAMIKA S. MATHESON (hereinafter "Matheson"), at times relevant hereto, was the Manhattan High School Acting Superintendent and maintained an office in the City, County and State of New York at 333 Seventh Avenue.

9. Defendant MELODEE KHRISTAN (hereinafter "Khristan"), at all times relevant hereto, was the Principal of Liberty High School of defendant DOE located in the City, County and State of New York at 250 West 18th Street.

10. Defendant CARLOS M. CARMONA (hereinafter "Carmona"), at all times relevant hereto, was the Assistant Principal for Instruction at Liberty High School of defendant DOE located in the City, County and State of New York at 250 West 18th Street.

11. The individual defendants are sued in their official and individual capacities.

12. At all times relevant and in their actions described herein, the individual defendants were acting under color of law and pursuant to their authority as public officers.

13. Defendants and their agents, servants and employees supervised, participated in, approved, carried out, acted with each other and were aware of but failed to prevent the actions complained of.

14. The actions complained of may be fairly said to represent official policy, ordinance and custom of defendant DOE and were committed by public officers high enough in defendant DOE so that their actions, as complained of, may be said to represent municipal decision making.

## FACTS

15. Plaintiff was duly appointed as a probationary high school teacher by defendant DOE in September 2007.

16. Plaintiff was assigned to Liberty High School located at 250 West 18th Street, New York, New York.

17. Plaintiff was hired, subject to a three year probationary term, prior to being eligible to receive tenure.

18. The Principal at Liberty High School, during the time that plaintiff was employed there, was defendant Khristan.

19. Plaintiff, as with any new teacher, was subject to a learning curve. However, during his first three years, plaintiff received no indication that his performance was progressing anything less than satisfactory.

20. During his first three years at Liberty High School, plaintiff's record of performance

-3-

was satisfactory. He received satisfactory year-end ratings for each and every year through the 2009-2010 school year.

21. During the first three years, defendant Khristan never observed plaintiff's job performance or provided him with any notice or feedback that his performance was anything less than satisfactory.

22. In fact, plaintiff was only observed once during his first year, that by defendant Carmona and was not observed at all during his second and third years.

23. Plaintiff, during his first three years, was not provided with any mentoring, professional development, workshops, letters to file, criticism of lesson plans, or support whatsoever, that should be expected to be given to a probationary teacher.

24. It was, therefore, quite surprising to plaintiff, that on May 25, 2010, shortly before he was to receive tenure at the end of three years of satisfactory ratings, that plaintiff was advised by defendant Khristan that he was not going to receive tenure; but would, instead, have to agree to an additional one year probationary period.

25. Plaintiff believed that he had no choice but to agree to the extension of probation in lieu of being terminated right then and there.

26. Therefore, on May 25, 2010, plaintiff and defendant Gorman entered into an Extension of Probation Agreement, whereby plaintiff's probationary period was extended for an additional year. The Agreement was signed by plaintiff and defendant Gorman. It was surprising to plaintiff that defendant Khristan did not sign the Agreement, even though she was a party to it.

time.

32. It was only at or around December 2010 that defendants and their agents finally began providing any type of assistance to plaintiff. Plaintiff was not provided mentoring until April 2011.

33. Plaintiff received two more unsatisfactory formal observations from defendant Khristan; one on March 8, 2011 and one on May 6, 2011. Again, defendant Khristan provided plaintiff with no meaningful pre- or post-observation conferences. Plaintiff disagreed with defendant Khristan's observation and conclusions.

34. Plaintiff was subsequently given an unsatisfactory year-end rating by defendant Khristan on June 28, 2011, the first one that plaintiff had ever received. Suddenly, plaintiff was rated as unsatisfactory in twenty categories, after being rating satisfactory the previous three years.

35. Plaintiff then received a letter from defendant Gorman dated June 28, 2011 advising him that she was denying his Certification of Completion of Probation and recommending termination of his license.

36. In support thereof, defendant Gorman alleged that "My consideration of the denial and termination is based on a review of your performance **during your employment**." (Emphasis added)

37. Plaintiff was not permitted, contrary to statute, with the opportunity to respond before defendant Gorman acted. The statute requires a Superintendent's review period before tenure can be denied.

38. Plaintiff's appointment as a probationary teacher terminated on August 28, 2011.

39. In a letter dated January 3, 2012, plaintiff was advised by defendant Matheson that she was reaffirming "the previous action which resulted in Denial of Certification of Completion of Probation effective close of business August 28, 2011."

40. Plaintiff has not been employed by defendant DOE since.

## COUNT I
## (Due Process)

41. Defendant DOE has adopted and implemented various procedures, policies and regulations that govern the manner in which probationary teachers, such as plaintiff, are to be treated.

42. The individual defendants had knowledge of these various procedures, policies and regulations and were obligated to adhere to them with reference to plaintiff's employment.

43. Plaintiff, as a probationary teacher, had an expectation and a legitimate claim of entitlement to have his employment as a probationary teacher guided and judged pursuant to these various procedures, policies and regulations.

44. Defendants could not arbitrarily deprive plaintiff of his status without affording him the process and entitlements provided by the said various procedures, policies and regulations.

45. Plaintiff was not afforded the process and entitlements which are provided by said procedures, policies and regulations which he had every legitimate expectation of receiving.

46. Defendant DOE's Chief Executive Memorandum #80 provides that a formal observation must include "both a pre- and post-observation conference and written feedback is required for probationary teachers …." Defendants did not provide such to plaintiff.

47.     Memorandum #80 also provides "Pre-conferences for all formal teacher observations are required. A one-on-one conference between supervisor and teacher – length of meeting is open ended. Discussion focuses on the content of the lesson and areas to be evaluated." Plaintiff was not provided any such meaningful opportunity; although he had every expectation that he would.

48.     Defendant Khristan, during plaintiff first three years as a probationary teacher, did not conduct any observations of plaintiff, in violation of defendant DOE's Rating Officer Handbook, pages 1 and 8, which provide:

> "A.    Rating Officer as a Trainer
>
> To develop and maintain the maximum potential of each pedagogical employee, the principal and other rating team members should:
>
> 1. Become involved in the observation and training of those who show a need for more attention than the average.
> 2. Make formal and informal visits.
> 3. Make the employees aware of their existing strengths and deficiencies.
> 4. Characterize each formal observation of the employee's performance as Satisfactory or Unsatisfactory and indicate why this is so.
> 5. Follow each formal observation with a conference and written report as soon as possible.
> 6. Provide a planned program for improvement with attainable goals.
> 7. Communicate, on a continuing basis, concerning progress or lack of progress.
> 8. Advise the employee in writing of the consequences of failure to improve."

High School Staff

For teachers under the jurisdiction of the high schools, it is recommended that the minimum number of classroom observations be as follows:

> Tenured Teachers on Maximum Salary Step - One full period or one composite per school year is to be made by the Assistant Principal.
>
> Tenured Teachers not yet on Maximum Salary Step - One full period or one composite per school term is to be made by the Assistant Principal.
>
> Probationary Teachers and New Teachers - Two full periods or two composites per school term by the Assistant Principal, one full period or one composite per school year by the Principal, and one additional full period or one additional composite per school year to be made by either the Principal or Assistant Principal."

49. Memorandum #80 states that "At the high school level ... new and probationary teachers must have a minimum of four formal classroom observations a year (two per term) .... The school principal will conduct at least one observation a year, the assistant principal may conduct the other ones. These are minimums." Defendants did not comply with this provision either.

50. Plaintiff had every right to expect that his probationary period, if it was to be extended, would be extended with reason. Plaintiff's probationary period was extended, without reason and without defendant Khristan even meeting with him or observing him to articulate any concerns. This was in direct contravention to defendant DOE's Division of Human Resources Rating Handbook entitled "Rating Pedagogical Staff Members," which requires the school rating official, i.e., defendant Khristan, to make informal and formal classroom visits with the teacher that

-9-

will allow him or improve.

51. Defendants also violated Component 15 of the Rating Handbook relating to formal observations which states that probationary teachers "must have formal observations by the principal or designee as part of a prescriptive plan to improve their teaching."

52. Defendants also denied plaintiff the process contained in the relevant collective bargaining agreement between the DOE and the United Federation of Teachers. For example, Article 8 therein requires that new and probationary teachers are entitled to classroom observations by a principal or supervisor which includes pre- and post-observation conferences and written feedback.

53. Contrary to defendants' procedures, policies and regulations, defendants did not give plaintiff prior warning that he was in danger of not receiving tenure prior to having him agree to the extension of probation, a warning that plaintiff had every right to expect.

54. At no point did defendants create any plan of action or strategy to address plaintiff's alleged teaching deficiencies prior to having him agree to the extension of probation, which plaintiff had every right to expect.

55. Plaintiff had every right to expect that defendants, defendant Khristan in particular, would address his strengths and weaknesses through classroom observations, support services and professional development. Defendants failed to do so.

56. Defendants did not provide plaintiff with a meaningful opportunity to improve any alleged deficiencies in his teaching performance, especially by not conducting observations or providing any feedback in contravention of procedure, policy and regulation.

Case 1:12-cv-03318-RRM-SMG Document 1 Filed 07/03/12 Page 10 of 15 PageID #: 10

57. Plaintiff had the right to expect that defendants would not ignore more than three years of satisfactory ratings and then suddenly jump on unsatisfactory observations that mysteriously arose under questionable circumstances.

58. Defendant Gorman did not provide plaintiff with the required notice and opportunity to interpose a response before she denied him the Certification of Completion of Probation and terminated him in violation of the Education Law of the State of New York.

59. Defendants did not give plaintiff any due consideration.

60. By doing so, defendants acted pursuant to a policy and practice of defendant DOE to give hyper-scrutiny to probationary teachers in tenure decisions and to prevent probationary teachers from receiving tenure even when their performance has been satisfactory.

61. Defendants' blatant failure to follow their own procedures, policies and regulations caused plaintiff irreparable damage, violated his property rights, and there was no alternative process employed to overlook the failure.

62. The actions and omission of defendants and their agents, servants and employees, as complained of and engaged in under color of law, constitute a violation of plaintiff's rights to procedural due process guaranteed to him by the Fifth and Fourteenth Amendments to the Constitution of the United States.

63. Defendants have thereby violated 42 U.S.C. § 1983.

64. By reason of the foregoing actions and omission of defendants and their agents, plaintiff has experienced and continues to experience humiliation, extreme emotional distress, pain and suffering, stigmatization, embarrassment, economic and pecuniary loss, and has suffered

and continues to suffer damage to his career, reputation and standing and has been and continues to be otherwise damaged due to the willful and wrongful conduct of defendants.

65. By reason of the foregoing, plaintiff has become entitled to an award of compensatory and punitive damages in an amount to be determined by a jury at trial, with interest, costs and disbursements.

## COUNT II
### (Liberty Interest)

66. Plaintiff asserts that he was sufficiently stigmatized by the statements made by defendants in connection with his termination from employment.

67. Plaintiff possessed a liberty interest in protecting his good name.

68. Plaintiff was entitled to process within which to clear his name.

69. Defendants did not afford plaintiff with an adequate opportunity to clear his name.

70. The actions and omission of defendants and their agents, servants and employees, as complained of and engaged in under color of law, constitute a violation of plaintiff's liberty interest guaranteed to him by the Fifth and Fourteenth Amendments to the Constitution of the United States.

71. Defendants have thereby violated 42 U.S.C. § 1983.

72. By reason of the foregoing actions and omission of defendants and their agents, plaintiff has experienced and continues to experience humiliation, extreme emotional distress, pain and suffering, stigmatization, embarrassment, economic and pecuniary loss, and has suffered and continues to suffer damage to his career, reputation and standing and has been and continues to be otherwise damaged due to the willful and wrongful conduct of defendants.

79. By their actions, in disregarding the sections of the collective bargaining agreement and other cited documents, which are incorporated by reference therein, defendants and their agents, servants and employees have breached their contractual obligations to plaintiff.

80. By reason of the foregoing actions and omission of defendants and their agents, plaintiff has experienced and continues to experience humiliation, extreme emotional distress, pain and suffering, stigmatization, embarrassment, economic and pecuniary loss, and has suffered and continues to suffer damage to his career, reputation and standing and has been and continues to be otherwise damaged due to the willful and wrongful conduct of defendants.

81. By reason of the foregoing, plaintiff has become entitled to an award of compensatory damages in an amount to be determined by a jury at trial, with interest, costs and disbursements.

## JURY DEMAND

82. Plaintiff herein demands a trial by jury of all issues in this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, MOACIR LIMA, prays that judgment be entered against defendants NEW YORK CITY DEPARTMENT OF EDUCATION, ELAINE GORMAN, TAMIKA S. MATHESON, MELODEE KHRISTAN and CARLOS M. CARMONA, as follows:

    a) on Count I, an award of compensatory and punitive damages in an amount to be determined by a jury at trial, with interest, costs and disbursements;

    b) on Count II, an award of compensatory and punitive damages in an amount to be determined by a jury at trial, with interest, costs and disbursements;

   c) on Count III, an award of compensatory and punitive damages in an amount to be determined by a jury at trial, with interest, costs and disbursements;

   d) on Count IV, an award of compensatory damages in an amount to be determined by a jury at trial, with interest, costs and disbursements; and

   e) such other and further relief may be deemed just and proper.

Dated: Jericho, New York
   May 25, 2012

                     WOLIN & WOLIN

                     By: Alan E. Wolin, Esq.
                     *Attorney for Plaintiff*
                     420 Jericho Turnpike, Suite 215
                     Jericho, New York 11753
                     Tel.: (516) 938-1199
                     Fax: (516) 938-1178
                     Email: wolinlaw@aol.com

**VERIFICATION**

State of New York )
)ss.:
County of Nassau )

MOACIR LIMA, being duly sworn, deposes and says:

I am the Plaintiff in the within action and I have read the foregoing document and know the contents thereof, the same is true to my knowledge, except as to those matters therein stated to be based upon information and belief, and as to those matters I believe them to be true.

*[signature]*
MOACIR LIMA

Sworn to before me this
25th day of May, 2012

*[signature]*
Notary Public

JILL A. FIEMAN
Notary Public, State of New York
No. 4993075
Qualified in Nassau County
Commission Expires March 9, 2014